1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
2  REBECCA A. PETERSON (241858)
   ROBERT K. SHELQUIST
3  100 Washington Avenue South, Suite 2200
4  Minneapolis, MN 55401
   Telephone: (612) 339-6900
5  Facsimile: (612) 339-0981
6  E-mail: rapeterson@locklaw.com
            rkshelquist@locklaw.com
7
8  Counsel for Plaintiff and the Classes
   (Additional Counsel listed on Signature Page)
9

10

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
                     **WESTERN DIVISION**
13

| | |
|---|---|
| 14  Trudy Bellinger, on behalf of herself and all others similarly situated, | CASE NO.   2:23-cv-0075 |
| 15 | |
| 16         Plaintiff, | **CLASS ACTION COMPLAINT** |
| 17      vs. | 1. Violation of the California Unfair Competition law (Cal. Bus. & Prof. Code § 17200, *et seq.*); |
| 18 | 2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*); |
| 19  Trader Joe's Company, | |
| 20         Defendant. | 3. Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); |
| 21 | 4. Breach of Implied Warranty of Merchantability; |
| 22 | 5. Unjust Enrichment; |
| 23 | 6. Fraud by Omission |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |

27

28

**INTRODUCTION**

1.      Plaintiff Trudy Bellinger ("Plaintiff") individually and on behalf of all others similarly situated brings this Class Action Complaint against defendant Trader Joe's Co. ("Defendant" or "Trader Joe's") for Defendant's reckless, and/or intentional practice of failing to disclose the presence of cadmium and lead (collectively "Heavy Metals") in its dark chocolate products, including Trader Joe's Dark Chocolate (72% Cacao) and Trader Joe's The Dark Chocolate Lover's Chocolate (85% Cacao), among others (collectively, the "Products"). Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full disclosure of all such substances on the Products' packaging and restoring monies to the members of the proposed Classes, who would not have purchased the Products had they known they contained the Heavy Metals and would not have paid premium prices for the Products had they known the truth about the existence of Heavy Metals in the Products.  Plaintiff alleges the following based upon personal knowledge, as well as investigation by her counsel as to themselves, and as to all other matters, upon information and belief.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

2.      Trader Joe's specifically represents to consumers that "we want to make absolutely clear that we would never sell any product we believe to be unsafe. We take these matters seriously – personally, even, as our families eat and drink TJ's products too."[1]  Consistent with such promises, reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell dark chocolate products that do not contain or have a material risk of containing Heavy Metals.  Reasonable consumers certainly

---

[1] *See* https://www.traderjoes.com/home/FAQ/product-faqs (last accessed December 28, 2022).

expect the dark chocolate products they purchase for their individual and family consumption to not be contaminated with Heavy Metals, substances known to accumulate and have significant and dangerous health consequences.

3.     Consumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the products.  Accordingly, reasonable consumers must and do rely on Defendant to know what its products contain and properly and fully disclose those contents.  Product contents, particularly contents like lead and cadmium, are material to a reasonable consumer's purchasing decisions.

4.     Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

5.     Defendant fails to disclose on its packaging that the Products contain Heavy Metals.

6.     No reasonable consumer would expect or understand that the Products contain or have a material risk of containing Heavy Metals.

7.     Defendant touts on its website the safety and quality of its Products. For example, on its website's "About Us" page, Defendant states:

> Trader Joe's is a national chain of neighborhood grocery stores. We are committed to providing our customers outstanding value in the form of the best quality products at the best everyday prices. Through our rewarding products and knowledgeable, friendly Crew Members, we have been transforming grocery shopping into a welcoming journey full of discovery and fun since 1967.
> …
> To earn a spot on our shelves, each product is submitted to a rigorous tasting panel process, in which every aspect of quality is investigated in context of the price we can offer. If a product is assessed as an

outstanding value, it becomes an essential part of the Trader Joe's shopping adventure.[2]

8.      Further, Defendant also touts the safety and quality of its Products in the "FAQ" section of its website. In response to the question "[w]hat can I expect from Trader Joe's private label products?" Defendant claims:

> When you see our name on a label, you can be assured that the product contains:
>
> - YES quality ingredients
> - NO artificial flavors
> - NO artificial preservatives
> - YES colors derived only from naturally available products
> - NO MSG
> - NO genetically modified ingredients
> - NO partially hydrogenated oils (artificial trans-fats)
> - NO "marketing" costs
> - YES tasting panel approval
> - YES great price[3]

9.      Defendant's website contains assurances that "nothing is more important than the health and safety of our customers and Crew Members," and a promise that Trader Joe's would "never sell any product we believe to be unsafe." [4]

10.     However, contrary to Defendant's assurances, the Products have been shown to contain detectable levels of cadmium and lead, both known to pose health risks to humans.[5]

---

[2] *See* https://www.traderjoes.com/home/about-us (last accessed December 28, 2022).

[3] *See* https://www.traderjoes.com/home/FAQ/product-faqs (last accessed December 28, 2022).

[4] *Id.*

[5] *See* Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports (Dec. 15, 2022) (the "Consumer Reports Article") (available at https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/) (last accessed December 28, 2022).

11.     Defendant fails to disclose to consumers that the Products contain (or have a material risk of containing) Heavy Metals.  Nowhere on the Products' packaging is it disclosed that they contain (or have a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions").

12.     Recently, it was revealed that Defendant is knowingly and/or recklessly selling products that contain cadmium and lead.  An article published by Consumer Reports identified certain dark chocolate products of Defendant's (herein defined as the "Tested Dark Chocolate"), including Defendant's Products, that were tainted with significant levels of Heavy Metals.

13.     Based on the Omissions, no reasonable consumer had any reason to know or expect that the Products contained Heavy Metals.  Furthermore, reasonable consumers like Plaintiff, who were purchasing the Products for consumption by themselves and their families, would consider the mere presence (or risk) of Heavy Metals a material fact when considering whether to purchase the Products.

14.     Defendant knows its customers trust the quality of its Products and expect the Products to be free of Heavy Metals.  Defendant also knows that its consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for Products they believe meet these standards.  Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contained Heavy Metals.

15.     Defendant knew the consumers to whom it markets the Products would find its Omissions material and that it was in a special position of public trust to those consumers.

16.     The Omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed Heavy Metals.

17.     The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for the Products that

4

omitted material information as to the Products' true quality and value and/or paid more for the Products than they would have had they known the truth about the Products. Defendant continues to wrongfully induce consumers to purchase its Products.

18.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Classes (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendant's Products.

## JURISDICTION AND VENUE

19.     This case is brought as a class action to remedy violations of California law by Defendant. This Court has jurisdiction over Defendant because Defendant is headquartered in this district, and does sufficient business in California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market through the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products in California.

20.     This Court also has personal jurisdiction over the Parties because Defendant is headquartered in this district and conducts a substantial part of its national operations with regular and continuous business activity in California, on information and belief, through its website and retail stores.

21.     Venue is proper in this Court pursuant to *Section 395(a)* of the *Code of Civil Procedure* because Defendant conducts business in Los Angeles County, many of the acts giving rise to the violations complained of occurred in Los Angeles County, and Plaintiff resides in Los Angeles County.

## PARTIES

22.     Plaintiff Trudy Bellinger ("Plaintiff Bellinger") is, and at all times relevant hereto has been, a resident of Los Angeles County in the state of California, which lies within this District.

23.     Plaintiff Bellinger purchased Trader Joe's The Dark Chocolate Lover's Chocolate Bar, 85% cacao at Defendant's store located at 11976 Ventura Boulevard in Studio City, California 91604. Plaintiff Bellinger estimates she purchased this Product at least twice per month between approximately 2019 and July 2022. Plaintiff Bellinger believed she was purchasing quality and healthy dark chocolate products that did not contain (or have a material risk of containing) Heavy Metals.

24.     Prior to purchasing the Products, Plaintiff Bellinger saw and relied upon the packaging of the Products.  During the time Plaintiff Bellinger purchased and consumed the Products, and due to the Omissions by Defendant, she was unaware that the Products contained (or had a material risk of containing) Heavy Metals and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Bellinger would be willing to purchase the Products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

25.     Defendant Trader Joe's Company is a well-known national chain of grocery stores headquartered in Monrovia, California.  Defendant is involved in the production, marketing, distribution, and sale of a variety of dark chocolate products throughout California and the United States.

26.     During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products.  Defendant therefore had control over how to label its Products as to their contents.

27.     Defendant has been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the Trader Joe's name throughout the United States, including in this District.  It has done so continuously throughout the Class Period. Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent,

unfair, misleading, and/or deceptive packaging and related marketing for the Products that did not disclose the presence of Heavy Metals.  Defendant is also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished products.

28.    Plaintiff relied upon the material Omissions missing from the Products' packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents through packaging that contained the Omissions.  The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Products.

**FACTUAL ALLEGATIONS**

**I.    Consumer Reports Investigation Demonstrates the Presence of Heavy Metals in the Products**

29.    In December 2022, Consumer Reports published a blockbuster report detailing the prevalence of Heavy Metals in dark chocolate products, including in Defendant's Products.[6] The Tested Dark Chocolate includes Defendant's 72% Cacao Dark Chocolate and The Dark Chocolate Lover's Chocolate 85% Cacao:[7]



---

[6] *See* Consumer Reports Article.
[7] *See id*.

1
2
3
4
5
6
7
8
9
10
11
12



13    30.    Using sophisticated testing techniques, Consumer Reports showed that

14 the Tested Dark Chocolate contains levels of lead and/or cadmium that exceed

15 California's maximum allowable dose level ("MADL").[8]

16    31.    As noted in the Consumer Reports Article, consumers "choose dark

17 chocolate in particular for its potential health benefits, thanks to studies that suggest

18 its rich supply of antioxidants may improve heart health and other conditions, and

19 for its relatively low levels of sugar."[9]    A recent survey from the National

20 Confectioners Association, referenced in the Consumer Reports Article, found that

21
22
23
24
25
26
27
28

---

[8] *See Proposition 65 No Significant Risk Levels (NSRLs) and Maximum Allowable Dose Levels (MADLs)*, California Office of Environmental Health Hazard Assessment, October 1, 2021; available at https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum (last accessed December 28, 2022)

[9] *Id.*

CLASS ACTION COMPLAINT

more than half of the survey participants described dark chocolate as a "better for you" candy.[10]

32.    Consumer Reports tested 28 dark chocolate bars for lead and cadmium from a variety of brands, including dark chocolate bars from Trader Joe's.[11]

33.    The Consumer Reports Article concluded that "[f]or 23 of the bars tested, eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals. Five of the bars were above those levels for both cadmium and lead."[12]

34.    Among the products tested were two Trader Joe's dark chocolate products. First, Trader Joe's Dark Chocolate (72% Cacao), was found to contain cadmium and lead (in fact, it was found to contain lead 192% above what California allows). Second, Trader Joe's The Dark Chocolate Lover's Chocolate (85% Cacao), was also found to contain both lead and cadmium (in fact, it was found to contain lead 127% and cadmium 229% above what California allows).[13]



---

[10] *See id.*
[11] *See id.*
[12] *Id.*
[13] *See id.*

CLASS ACTION COMPLAINT

35.    The Consumer Reports Article warned that dark chocolate tends to be higher in heavy metals than milk chocolate, likely because of its higher cacao content.[14]  Cacao plants take up cadmium from the soil, with the metal accumulating in cacao beans as the tree grows.[15]  Lead on the other hand appears to get into cacao after the cacao beans are harvested.[16]

36.    Further, the Consumer Reports Article identified potential solutions to minimize or omit the presence of lead in cacao, including changes in harvesting and manufacturing practices.[17] Such practices could include minimizing soil contact with cacao beans as they lie in the sun, and drying beans on tables or clean tarps away from roads or with protective covers, so lead-contaminated dust would not land on

---

[14] *See id.*
[15] *See id.*
[16] *See id.*
[17] *Id.*

CLASS ACTION COMPLAINT

the cacao beans.[18] Another option is finding ways to remove metal contaminants when beans are cleaned at factories.[19]

37.     Getting cadmium out of cacao is also possible by carefully breeding or genetically engineering plants to absorb less of the heavy metal. Other potential solutions include replacing older cacao trees with younger ones, because cadmium levels tend to increase as the plants get older and removing or treating soil known to be contaminated with cadmium.[20]

38.     More immediately, in order to minimize levels of cadmium in their products, chocolate makers, such as Defendant, could survey their cacao-growing areas to determine cadmium levels, and favor beans from places with lower levels.[21] They could then blend beans from higher-cadmium areas with beans with lower levels, which some manufacturers are already doing.[22]

39.     For example, the CEO at Taza, which makes one of the products found to have lower levels of both lead and cadmium in the Consumer Reports' tests, stated that his company mixes beans from "different origins to ensure that the final product" has lower levels.[23]

## II.    Defendant Omits Any Mention of Heavy Metals on Its Packaging

40.     Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Products throughout the United States, including California.

41.     Defendant's Products are available at numerous retail and online outlets throughout the United States, including California.

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

42.    Defendant touts its commitment to providing its customers with "outstanding value in the form of the best quality products…."[24]

43.    Defendant further claims that "nothing is more important than the health and safety of our customers" and that it makes certain its products "meet our stringent quality and safety expectations."[25]

44.    However, inconsistent with such assertions about the quality of the products, Defendant knows or should know that the Products contain or have a material risk of containing Heavy Metals yet failed to disclose this fact to consumers.

45.    Defendant intentionally omitted the presence or material risk of Heavy Metals in the Products in order to induce and mislead reasonable consumers to purchase its Products and pay a price premium for them.

46.    As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence or material risk of Heavy Metals in the Products without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of these products.

47.    Information regarding the true nature and/or presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals in the Products from Plaintiff and members of the Classes.

---

[24] *See* https://www.traderjoes.com/home/about-us (last accessed December 28, 2022).
[25] *See* https://www.traderjoes.com/home/FAQ/product-faqs (last accessed December 28, 2022).

CLASS ACTION COMPLAINT

III. **Due to the Presence and Material Risk of Heavy Metals in the Products, the Omissions are Misleading**

A. **Heavy Metals**

48.     Lead and cadmium are heavy metals. The harmful effects of heavy metals are well-documented, particularly on children. Exposure to heavy metals puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adults. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. As such, it is important to limit exposure.

49.     Given the negative effects of heavy metals (such as lead and cadmium) on child development and adult health, the presence of these substances in food is a material fact to reasonable consumers, including Plaintiff and members of the Classes.

50.     Defendant knows that the presence (or material risk) of Heavy Metals in its Products is a material fact to reasonable consumers, including Plaintiff and the Class members.

51.     At all times during the relevant period, Defendant knew or should have known the Products include undisclosed levels of Heavy Metals and were not sufficiently tested for the presence and material risk of Heavy Metals.

52.     Defendant's Products included undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished products.  Defendant was or should have been aware of this risk and failed to disclose it to Plaintiff and the members of the Classes despite having a duty to disclose.

53.     Defendant knew or should have known that Heavy Metals pose health risks to consumers.

54.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Products to the extent reasonably possible.

55.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products and the contributing ingredients.

56.     Defendant knew consumers purchased the Products based on the reasonable expectation that Defendant manufactured the Products to the highest standards. Based on this expectation, Defendant knew or should have known consumers' reasonable expectation is that the Products do not contain Heavy Metals, and that Defendant sufficiently tests the Products and corresponding ingredients for Heavy Metals.

57.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared lead and cadmium "dangerous to human health."[26]

58.     Additionally, while there are no federal regulations regarding the levels of Heavy Metals in most consumer products, it is not due to a lack of risk.

59.     Indeed, the FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[27]

---

[26] *See Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform U.S. House of Representatives, February 4, 2021 ("House Report") at 2 (available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf) (last accessed December 28, 2022).
[27] *Environmental Contaminants in Food*, U.S. Food & Drug Administration;

60.    In addition, California's Proposition 65 "requires businesses to provide warnings to Californians about significant exposures to chemicals [including cadmium and lead] that cause cancer, birth defects or other reproductive harm."[28]

61.    Lead and cadmium are neurotoxins, or poisons, which affect the nervous system.  As explained by the Consumer Reports Article:

> Consistent, long-term exposure to even small amounts of heavy metals can lead to a variety of health problems. The danger is greatest for pregnant people and young children because the metals can cause developmental problems, affect brain development, and lead to lower IQ, says Tunde Akinleye, the CR food safety researcher who led this testing project.
>
> 'But there are risks for people of any age,' he says. Frequent exposure to lead in adults, for example, can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[29]

62.    Heavy Metals accumulate in the body, meaning the risk they pose grows over time and can remain in one's body for years.[30]

---

available                                                        at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm  (last accessed December 28, 2022).

[28] *About Proposition 65*, California Office of Environmental Health Hazard Assessment; available at https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=Proposition%2065%20requires%20businesses%20to,are%20released%20into%20the%20environment (last accessed December 28, 2022).

[29] *See* Consumer Reports Article.

[30] *See Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, August 16, 2018 (updated September 29, 2021); available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed December 28, 2022.

63.     However, the knowledge of the risks associated with exposure to heavy metals is not a new phenomenon.  Defendant knew or should have known the risks associated with the presence of Heavy Metals in foods consumed by its customers.[31]

64.     Despite the known risks of exposure to these Heavy Metals, Defendant has recklessly and/or knowingly sold the Products without disclosing the presence or risk of lead and cadmium to consumers like Plaintiff and members of the Classes.

**B.     Cadmium**

65.     The Products also contain (or have a material risk of containing) cadmium.

66.     Cadmium is considered a cancer-causing agent.[32]

67.     "[A]ny cadmium exposure should be avoided."[33] Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and fragile bones.[34]

---

[31] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food- Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed December 28, 2022); *see also* 21 CFR 172,                                    available                                    at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed December 28, 2022).

[32] https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed December 28, 2022).

[33] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environ Health Perspect. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed December 28, 2022).

[34] *Id.*

68.    Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[35]

69.    Exposure to cadmium is also linked to cardiovascular disease and cancer.[36]

70.    Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children[.]"[37]

71.    Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[38]    The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[39]

---

[35] https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed December 28, 2022).
[36] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environ Health
Perspect. 2010 Dec; 118(12): A528-A534,
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed December 28, 2022).
[37] *See Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures ("Healthy Babies Bright Futures Report") at 69 (available                                                    at
https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed December 28, 2022).
[38] *Id.*
[39] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry;                                available                                at
https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15    (last    accessed December 28, 2022).

CLASS ACTION COMPLAINT

72.   Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequesters in [human] tissue."[40]

**C.   Lead**

73.   The Products contain (or have a material risk of containing) lead.

74.   "No amount of lead is known to be safe."[41]   Lead is extremely toxic, and its effects cannot be reversed or remediated.[42]

75.   Exposure to lead can result in neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, hypertension, and gastrointestinal and cardiovascular effects, and can also cause reduced fetal growth or lower birth weights in pregnant women.[43]

76.   Lead is a carcinogen and lead exposure can seriously harm the brain and nervous system in children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

77.   Exposure to lead in foods builds up over time.   Lead build-up can and has been scientifically demonstrated to lead to the development of chronic

---

[40] Genuis S.J., Schwalfenberg G., Siy A.-K.J., Rodushkin I. (2012) *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE 7(11): e49676, available *at* https://doi.org/10.1371/journal.pone.0049676 (last accessed December 28, 2022).

[41] *See Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, August 13, 2016; available at https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health (last accessed December 28, 2022).

[42] Consumer Reports, *Heavy Metals in Baby Food: What You Need to Know*, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed December 28, 2022).

[43] *What are Possible Health Effects from Lead Exposure*, Agency for Toxic Substances and Disease Registry; available at https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological_effects.html (last accessed December 28, 2022).

poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

78.   Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[44]

## IV.   Dark Chocolate Can Be Manufactured with Heavy Metals Below California's Maximum Allowable Dose Levels

79.   Dark chocolate manufacturers, such as Taza, are able to produce dark chocolate products with levels of lead and cadmium below California's MADL.[45]

80.   The Consumer Reports Article noted that "while most of the chocolate bars in CR's tests had concerning levels of lead, cadmium, or both, five of them were relatively low in both[,]" showing it is possible to make products with lower amounts of heavy metals.[46]

81.   In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[47]  These efforts include increasing awareness of the dangers of even low levels of lead exposure to young

---

[44] *See* Healthy Babies Bright Futures Report at 18 (available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed December 28, 2022). *See also* House Report at 11 (available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf) (last accessed December 28, 2022).

[45] *See* Consumer Reports Article.

[46] *See id*.

[47] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*. Journal of Public Health Management and Practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed December 28, 2022).

CLASS ACTION COMPLAINT

children.[48]   The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention ("CDC") identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[49]

## V.    The Material Omissions Misled and Deceived Reasonable Consumers

82.    The Omissions wrongfully convey to consumers that Defendant's Products are of a superior quality and have certain characteristics that they do not actually possess.

83.    For instance, although Defendant misleadingly causes consumers to believe its Products do not contain Heavy Metals due to the material Omissions, the Products do in fact contain or have a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers.

84.    Additionally, Consumer Reports conducted testing of selected samples of the Products sold by Defendant as well as the Tested Dark Chocolate made by other manufacturers.   Each of Defendant's Products at issue contained levels of Heavy Metals that exceed California's MADL for cadmium and/or lead.[50]

85.    Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence (or material risk of) Heavy Metals in the Products.

86.    Due to the Omissions, a reasonable consumer would not suspect the presence of Heavy Metals in the Products. Unlike Defendant, reasonable consumers would not be able to independently detect the presence of Heavy Metals in the Products and are generally without any means to conduct his or her own scientific tests or to review scientific testing conducted on the Products. Moreover,

[48] *Id*.
[49] *Id*.
[50] *See* Consumer Reports Article.

CLASS ACTION COMPLAINT

information regarding the presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Products.

87. Reasonable consumers must and do rely on Defendant to honestly report what its Products contain.

88. Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect or understand that the Products contained or had a material risk of containing Heavy Metals.

89. In light of Defendant's statements regarding the quality of the Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Products contained or had a material risk of containing Heavy Metals.

90. Defendant had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

91. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

92. Defendant knew that properly and sufficiently monitoring the Products for Heavy Metals in the ingredients and finished products was not only important, but critical.

93. Additionally, Defendant knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of the Heavy Metals.

94. Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Products by requiring proper monitoring and testing

for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

95.   The Omissions are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiff.  This is true especially considering Defendant's long-standing campaign to market the Products as "best quality products" that meet Defendant's "stringent quality and safety expectations" as Defendant claims "nothing is more important than the health and safety of our customers[.]"  Such statements were made to induce reasonable consumers, such as Plaintiff, to purchase the Products.

96.   The Omissions make the Products' packaging deceptive based on the presence or risk of Heavy Metals in the Products.  Reasonable consumers, like Plaintiff, would consider the presence or risk of Heavy Metals in the Products a material fact when considering what dark chocolate products to purchase.

97.   Defendant knew it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

98.   Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

99.   The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the Products.

100.   Defendant knew or should have known that the Products contained or may contain undisclosed levels of Heavy Metals that were not disclosed on the packaging.

101.   Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Products and ingredients for Heavy Metals to ensure the quality of the Products.

102.   Defendant knew or should have known that consumers paid higher prices for the Products and expected Defendant to sufficiently test and monitor the Products and ingredients for the presence of Heavy Metals.

103.   The Omissions are material and render the Products' packaging deceptive, as without full disclosure, reasonable consumers believe the Products are "safe, high-quality products," and are free of Heavy Metals.

104.   Moreover, no reasonable consumer could expect or understand that the Products contained Heavy Metals.

105.   The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Classes to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

106.   As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Products.

## DEFENDANT'S OMISSIONS VIOLATE CALIFORNIA LAW

107.   California law is designed to ensure that a company's claims about its products are truthful and accurate.

108.   Defendant violated California law by recklessly, unfairly, and/or intentionally claiming that the Products were "best quality products" that meet Defendant's "stringent quality and safety expectations," and by not accurately detailing that the Products contain or have a material risk of containing Heavy Metals.

109.   Defendant has engaged in this long-term advertising campaign omitting the mention that the Products contain (or have a material risk of containing) Heavy Metals.

## PLAINTIFF'S RELIANCE WAS
## REASONABLE AND FORESEEABLE BY DEFENDANT

110.   Plaintiff read and relied upon the packaging of the Products when making her purchasing decisions.  Had she known Defendant omitted and failed to disclose the presence of Heavy Metals on the Products' packaging, she would not have purchased the Products.

111.   A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

## DEFENDANT'S KNOWLEDGE AND NOTICE
## OF ITS BREACH OF ITS IMPLIED WARRANTIES

112.   Defendant had sufficient notice of its breach of implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Products.  Defendant also had exclusive knowledge of its suppliers, and whether any suppliers provided ingredients that contained Heavy Metals.

113.   Furthermore, Defendant was put on notice by, *inter alia*, the consent judgment it was subject to in *As You Sow v. Trader Joe's, Inc.*, No. CGC-15-548791 (Cal. Sup. Ct. Feb. 15, 2018). As You Sow, a nonprofit organization, filed suit against Trader Joe's for its failure to warn California residents of the presence of lead and cadmium in its products. The parties reached a Consent Judgment whereby Defendants, including Defendant here, were required to include Product Trigger Warnings should they exceed an agreed upon concentration of lead, cadmium, or both.  In order to comply, regular testing for lead and cadmium levels had to have occurred. Thus, Defendant had knowledge that its products contained Heavy Metals.

114.   Moreover, Defendant was put on notice by, *inter alia*, the December 2022 Consumer Reports Article that identified the presence of Heavy Metals in Defendant's Products.

115.   Defendant has not changed its packaging to include any disclaimer that the Products included undisclosed Heavy Metals.

**PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASSES**

116.   Defendant knew that reasonable consumers such as Plaintiff and the proposed members of the Classes would be the end purchasers of the Products and the targets of its advertising.

117.   Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Products, including Plaintiff and the proposed members of the Classes.

118.   Defendant directly marketed to Plaintiff and the proposed Classes through the Products' packaging.

119.   Plaintiff and the proposed members of the Classes are the intended beneficiaries of the implied warranties.

**CLASS ALLEGATIONS**

120.   Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale (the "Class").

121.   Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who are residents of California and who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale in California (the "California Subclass").

122.   Excluded from the Class and California Subclass (collectively, "Classes") are Defendant, any of Defendant's parent companies, subsidiaries and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all

governmental entities, and any judge, justice, or judicial officer presiding over this matter.

123.   This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

124.   The members of the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

125.   Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

    a.    whether Defendant owed a duty of care;

    b.    whether Defendant owed a duty to disclose;

    c.    whether Defendant knew or should have known that the Products contained or may contain Heavy Metals;

    d.    whether Defendant failed to disclose that the Products contained or may contain Heavy Metals;

    e.    whether the claims of Plaintiff and the Classes serve a public benefit;

    f.    whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

    g.    whether the Omissions are material to a reasonable consumer;

    h.    whether the inclusion of Heavy Metals in the Products is material to a reasonable consumer;

    i.    whether the Omissions are likely to deceive a reasonable consumer;

CLASS ACTION COMPLAINT

j. whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

k. whether Defendant breached its duty of care;

l. whether Defendant breached its duty to disclose;

m. whether Defendant violated the laws of the State of California;

n. whether Defendant breached its implied warranties;

o. whether Defendant engaged in unfair trade practices;

p. whether Defendant engaged in false advertising;

q. whether Defendant made fraudulent omissions;

r. whether Plaintiff and members of the Classes are entitled to actual, statutory, and punitive damages; and

s. whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

126. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

127. Plaintiff's claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

128. Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

129. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such

CLASS ACTION COMPLAINT

that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

130.   Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

131.   As a result of the foregoing, class treatment is appropriate.

<u>**COUNT I**</u>
<u>**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***</u>
<u>**(ON BEHALF OF PLAINTIFF AND THE CLASS, OR IN THE ALTERNATIVE, THE CALIFORNIA SUBCLASS)**</u>

132.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

133.   The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

134.   Defendant's failure to disclose the presence of Heavy Metals in the Products is likely to deceive the public.

**Unlawful**

135.   As alleged herein, Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Products violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*; and

- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*

**Unfair**

136.   Defendant's conduct with respect to the packaging and sale of the Products is unfair because Defendant's conduct was immoral, unethical,

unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

137.   Defendant's conduct with respect to the packaging and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

138.   Defendant's conduct with respect to the packaging and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

139.   Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

        a.   Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that was not known or reasonably accessible to Plaintiff and the Classes; and

        b.   Defendant actively concealed the presence of Heavy Metals from Plaintiff and the Classes.

140.   Plaintiff and the members of the Classes relied upon the Products' packaging provided to them by Defendant when making their purchasing decisions. Had Plaintiff and the members of the Classes known Defendant failed to disclose the presence of Heavy Metals on the Products' packaging, they would not have purchased the Products.

141.   In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

142.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Products are safe for consumption and do not contain Heavy Metals.

143.    On behalf of herself and the Classes, Plaintiff also seeks an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition

**COUNT II**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF AND THE CLASS, OR IN THE**
**ALTERNATIVE, THE CALIFORNIA SUBCLASS)**

144.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

145.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

146.    As set forth herein, Defendant's failure to disclose the presence (or risk of presence) of Heavy Metals in the Products is likely to deceive the public.

147.    Defendant knew the Products contained undisclosed levels of Heavy Metals.  Defendant had a duty to disclose the presence of Heavy Metals, and by omitting their presence, misled consumers.

148.    Defendant knew, or reasonably should have known, that these Omissions were misleading to reasonable consumers.

149.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Products do not contain Heavy Metals.

CLASS ACTION COMPLAINT

150.   Plaintiff and the members of the Classes are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

**COUNT III**
**VIOLATION OF CAL. CIV. CODE § 1750, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

151.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

152.   Plaintiff and each proposed member of the Classes are a "consumer," as that term is defined in California Civil Code §1761(d).

153.   The Products are "goods," as that term is defined in California Civil Code §1761(a).

154.   Defendant is a "person" as that term is defined in California Civil Code §1761(c).

155.   Plaintiff and each of the proposed members of the Classes' purchases of Defendant's Products constituted a "transaction" as that term is defined in California Civil Code §1761(e).

156.   Defendant's conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

  a.   California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals in the Products;

  b.   California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Products were of a particular standard, quality, or grade, when they were of another; and

c.   California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised.

157.   The Omissions were material as reasonable consumers such as Plaintiff and the members of the Classes would deem the presence of Heavy Metals important in determining whether to purchase the Products.

158.   Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

a.   Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that were not known or reasonably accessible to Plaintiff and the members of the Classes; and

b.   Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Classes.

159.   Plaintiff and the members of the Classes relied upon the information supplied to them by Defendant's packaging as to the quality, make-up, and included ingredients of the Products.

160.   As a direct and proximate result of these violations, Plaintiff and the members of the Classes have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

161.   Plaintiff and members of the Classes also seek any other injunctive relief the Court deems proper under CLRA §1780(a)(5).

162.   Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (ON BEHALF OF PLAINTIFF AND THE CLASS, OR IN THE
## ALTERNATIVE, THE CALIFORNIA SUBCLASS)

163.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

164.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the members of the Classes.

165.    There was a sale of goods from Defendant to Plaintiff and the members of the Classes.

166.    As set forth herein, Defendant manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiff and the members of the Classes, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use (consumption by consumers).

167.    Plaintiff and the members of the Classes relied on these implied warranties when they purchased the Products.

168.    The Products were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals that do not conform to the packaging.

169.    These promises became part of the basis of the bargain between Defendant and Plaintiff and the members of the Classes, and thus constituted implied warranties.

170.    Defendant breached its implied warranties by selling Products that contain Heavy Metals.

171.    Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Products as a result of the *As You Sow* litigation and Consent

Judgment, as well as the public investigation and report published by Consumer Reports that showed the Products contain Heavy Metals.

172.   Privity exists because Defendant impliedly warranted to Plaintiff and the members of the Classes that the Products did not contain contaminants such as the Heavy Metals and by failing to mention or disclose the presence of Heavy Metals.

173.   As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and the members of the Classes suffered actual damages as they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals.

174.   Plaintiff, on behalf of herself and the members of the Classes, seeks actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

**COUNT V**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS, OR IN THE ALTERNATIVE, THE CALIFORNIA SUBCLASS)**

175.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

176.   Substantial benefits have been conferred on Defendant by Plaintiff and the members of the Classes through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

177.   Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would not contain Heavy Metals.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

178.   Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

      a.    Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that were not known or reasonably accessible to Plaintiff and the members of the Classes; and

      b.    Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Classes.

179.   Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the members of the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the members of the Classes.

180.   Plaintiff and the members of the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

181.   Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### COUNT VI
### FRAUD BY OMISSION
### (ON BEHALF OF PLAINTIFF AND THE CLASS, OR IN THE ALTERNATIVE, THE CALIFORNIA SUBCLASS)

182.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 - through 131 above, as though fully set forth herein.

183.   Defendant knew or should have known the Products contained or may contain undisclosed levels of Heavy Metals.

184.   Plaintiff and the members of the Classes and Defendant acted within the context of a business transaction when Plaintiff and the members of the Classes purchased Defendant's Products for household or business use, and not for resale.

185.   Defendant actively and knowingly concealed from and failed to disclose to Plaintiff and the members of the Classes, that the Products contained undisclosed levels of Heavy Metals.

186.   As a food manufacturer, Defendant is in a special position of trust upon which consumers rely.

187.   Defendant was under a duty to disclose to Plaintiff and the members of the Classes the true quality, characteristics, ingredients, and suitability of the Products because:

      a.   Defendant was in a superior position to know the true state of facts about its products;

      b.   Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by consumers; and

      c.   Defendant knew that Plaintiff and the members of the Classes could not reasonably have been expected to learn or discover the presence or risk of inclusion of Heavy Metals without Defendant disclosing it on the Products' packaging.

188.   Defendant knew its customers trust the quality of its products and expect the Products to be free of Heavy Metals.  Defendant also knew that certain consumers seek out and wish to purchase premium Products that possess high quality ingredients free of contaminants and that these consumers will pay more for Products that they believe possess these qualities.

189.   Due to the Omissions on the Products' packaging, Defendant had a duty to disclose the whole truth about the presence of Heavy Metals in the Products to Plaintiff and the members of the Classes.

190.   Defendant acted in bad faith when it intended that Plaintiff and the members of the Classes would rely on the Omissions when purchasing the Products, unaware of the undisclosed material facts.

191.   Defendant was under a duty to disclose the presence of Heavy Metals because Defendant undertook the disclosure of information about the Products on the Products' packaging.

192.   Defendant failed to discharge its duty to disclose the presence of Heavy Metals in the Products.

193.   Defendant allowed its packaging to intentionally mislead consumers, such as Plaintiff and the members of the Classes.

194.   The facts concealed or not disclosed by Defendant to Plaintiff and the members of the Classes are material in that a reasonable consumer would have considered the presence of Heavy Metals important when deciding whether to purchase the Products.

195.   Defendant knew or should have known the Omissions were material to Plaintiff's and the members of the Classes' decisions to purchase the Products and would induce Plaintiff and the members of the Classes to purchase the Products.

196.   Defendant intentionally concealed the presence of Heavy Metals in the Products with intent to defraud and deceive Plaintiff and the members of the Classes.

197.   Plaintiff and the members of the Classes justifiably relied on Defendant's Omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Products and inherently unfair to consumers of the Products, such as Plaintiff and the members of the Classes.

198.   As a direct and proximate result of Defendant's conduct, Plaintiff and the members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known the Products included undisclosed levels of Heavy Metals.

199.   Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as to each and every count, including:

(a)   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

(b)   An order enjoining Defendant from selling the Products until the Heavy Metals are removed or full disclosure of the presence of same appears on all packaging;

(c)   An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

(d)   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

(e)   An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or

CLASS ACTION COMPLAINT

misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f)     An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g)     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(h)     An order requiring Defendant to pay punitive damages on any count so allowable;

(i)     An order awarding attorneys' fees and costs to Plaintiff and the Classes; and

(j)     An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims so triable.

Dated:  January 6, 2023          **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**


By:  s/ Rebecca A. Peterson
Rebecca A. Peterson (241858)
Robert K. Shelquist*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

**GEORGE GESTEN MCDONALD, PLLC**
Lori G. Feldman*
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
LFeldman@4-Justice.com

**GEORGE GESTEN MCDONALD, PLLC**
David J. George*
Brittany L. Brown*
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
DGeorge@4-Justice.com
BBrown@4-justice.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson*
Catherine Sung-Yun K. Smith*
Shashi Gowda
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
sgowda@gustafsongluek.com

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler*
Kara A. Elgersma*
311 South Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wbe-llp.com
kae@wbe-llp.com

CLASS ACTION COMPLAINT

**BARRACK, RODOS & BACINE**
Stephen R. Basser (121590)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

**Proposed Co-Class Counsel**

*Pro hac vice forthcoming

41